USCA1 Opinion

 

 February 8, 1994 [NOT FOR PUBLICATION] UNITED STATES COURT OF APPEALS FOR THE FIRST CIRCUIT ____________________ No. 93-1532 IRMA VIOLETA DAVILA CORTES, Plaintiff, Appellant, v. DR. ANTONIO RAMOS BARROSO, ET AL., Defendants, Appellees. ____________________ APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF PUERTO RICO [Hon. Jaime Pieras, Jr., U.S. District Judge] ___________________ ____________________ Before Breyer, Chief Judge, ___________ Coffin, Senior Circuit Judge, ____________________ and Boudin, Circuit Judge. _____________ ____________________ A. Santiago Villalonga with whom Law Offices of Harvey B. Nachman ______________________ _________________________________ was on brief for appellant. Angel R. De Corral-Julia with whom Ruy V. Diaz-Diaz, De Corral & ________________________ ________________ ____________ De Mier and Jose M. Ramos-Barroso were on brief for appellees. _______ _____________________ ____________________ ____________________ Per Curiam. Irma Violeta Davila Cortes sued her ___________ gynecologist, Dr. Antonio Ramos Barroso, for medical malpractice, alleging that she was injured by Dr. Ramos negligence in performing a hysterectomy upon her on March 21, 1989. The case was tried to a jury in January 1993, and the jury returned a verdict for the defendant. On February 2, 1993, Davila moved for a new trial on the ground that one of the jurors, Ana Teresa Gonzalez, had improperly concealed a business relationship with the defendant. Davila's claim is that Gonzalez incorrectly answered a question by the trial judge at voir dire, thereby precluding _________ plaintiff from exercising her peremptory challenges in light of all the relevant facts. Specifically, the trial judge asked all of the prospective jurors whether any of them were "personally acquainted with this defendant, related to him by blood or marriage, or [if any juror] or any member of [her] immediate family [had] any connection of any kind with this defendant." All the jurors responded in the negative. Individual questioning of the jurors selected for the trial panel revealed that Gonzalez was employed as an assistant manager in the credit department of Medics Hospital Supply, a business engaged in selling medical supplies to doctors, patients, and hospitals. Although Gonzalez has never indicated that she had any direct relationship with the defendant Ramos, Davila learned after trial that Ramos had -2- -2- been a client of either Medics or one of its sister companies for at least ten years.1 On this basis Davila sought a new trial. The district court denied Davila's motion for a new trial on the grounds that "[p]laintiff has offered no evidence that the defendant and the juror in question knew each other or that the juror was biased in favor of the defendant. In addition, the plaintiff had ample opportunity to question the juror during voir dire concerning whether she or her employer had any business dealings with the defendant." Davila moved for reconsideration, pointing out that her attorneys were precluded by local rule from interviewing Gonzalez after trial and that voir dire had been _________ conducted by the court without questioning by the parties' attorneys. The district court denied reconsideration, and this appeal followed. In McDonough Power Equipment, Inc. v. Greenwood, 464 _________________________________ _________ U.S. 548, 556 (1984), the Supreme Court held that "to obtain a new trial [based on a juror's inaccurate answer to a question on voir dire], a party must first demonstrate that a _________ juror failed to answer honestly a material question on voir ____ dire, and then further show that a correct response would ____ ____________________ 1Davila also asserts that Ramos' office is two doors down the block from one of Medics' branch offices in Hato Rey; there is no evidence, however, that this was the office at which Gonzalez was employed. -3- -3- have provided a valid basis for a challenge for cause." The reason for this requirement is that "[a] trial represents an important investment of private and social resources, and it ill serves the important end of finality to wipe the slate clean simply to recreate the peremptory challenge process because counsel lacked an item of information which objectively he should have obtained from a juror on voir dire _________ examination." Id. at 555. Our circuit has held further ___ that "[w]hen a non-frivolous suggestion is made that a jury may be biased or tainted by some incident, the district court must undertake an adequate inquiry to determine whether the alleged incident occurred and if so, whether it was prejudicial." United States v. Ortiz-Arrigoitia, 996 F.2d _____________ ________________ 436, 442 (1st Cir.), petition for cert. filed, 62 U.S.L.W. _________________________ 3496 (November 26, 1993). Nonetheless, "[a] district court has broad, though not unlimited, discretion to determine the extent and nature of its inquiry into allegations of juror bias." Id. at 443. Where the allegations are unpersuasive ___ on their face, the district court s discretion includes the discretion to undertake no investigation at all. With these principles in mind, we find no abuse of discretion in the district court s refusal to undertake an investigation of Davila's allegations. As the district court pointed out, there was no evidence of any kind that Gonzalez knew Ramos. Even if we assume arguendo that Gonzalez knew ________ -4- -4- that Ramos did business with her employer, the court's voir ____ dire question about "any connection of any kind" was very ____ general; and nothing in Davila's allegations is inconsistent with the view that Gonzalez's answer was at worst an honest mistake. Cf. McDonough, 464 U.S. at 555 ("To invalidate the ___ _________ result of a 3-week trial because of a juror s mistaken, though honest, response to a question, is to insist on something closer to perfection than our judicial system can be expected to give."). What Davila sought was permission to embark upon a fishing expedition, and on this record we think that the district court was not obligated to go along.2 Any doubt in our minds is eliminated by Davila's failure at voir dire to inquire into the possibility of business _________ dealings between Ramos and Gonzalez after the latter disclosed that she worked for a medical supply company. Although voir dire was conducted by the trial judge, the __________ parties had the opportunity to request that certain questions be put to prospective jurors. Given Davila's failure to pursue a possible business connection between Ramos and Gonzalez even after it was disclosed that her company was engaged in selling medical supplies to doctors, we are not ____________________ 2The Second Circuit reached an identical conclusion in a remarkably similar case, holding that no inquiry into juror bias was required where a juror failed to disclose on voir ____ dire that she was an officer at a bank that had dealings with ____ the defendants. See Clarkson Co. v. Shaheen, 660 F.2d 506, ___ ____________ _______ 514 (2d Cir. 1981). -5- -5- surprised that the district court viewed plaintiff s later attempt to revive the issue with a jaundiced eye. Affirmed. ________ -6- -6-